**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

GREGORY MYLES, #383113,

Petitioner,

v.

BLAINE LAFLER,

Respondent,
_________________________________________/

Civil No. 2:06-CV-14101
HONORABLE GERALD E. ROSEN
CHIEF UNITED STATES DISTRICT JUDGE

**OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY OR LEAVE TO APPEAL IN FORMA PAUPERIS**

Gregory Myles, ("Petitioner"), presently incarcerated at the Michigan Reformatory in Ionia, Michigan, has filed a *pro se* petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254, in which he challenges his convictions for armed robbery, M.C.L.A. 750.529; assault with intent to do great bodily harm less than murder, M.C.L.A. 750.84; felon in possession of a firearm, M.C.L.A. 750.224f; and possession of a firearm in the commission of a felony, M.C.L.A. 750.227b. For the reasons stated below, the petition for writ of habeas corpus is DENIED.

## I. Background

Petitioner was convicted of the above offenses following a jury trial in the Wayne County Circuit Court.

Petitioner's convictions arose from the April 22, 2003 armed robbery of Charles Green, a pizza delivery man, in Detroit, Michigan.

Carl Lovette testified that he was the general manager of a Domino's Pizza store

in Detroit. Lovette testified that Charles Green worked for him as a delivery driver. (Tr. 8/4/03, p. 77). Lovette testified that Green was dispatched to deliver a pizza to 3668 East Ferry Street at about 11:15 p.m. Around 11: 35 p.m., Green called Lovette and informed him that there had been a problem. (*Id*., pp. 78-79). Green returned to the store after midnight. Green had no pizza or money and was holding his Domino's cap in his hands. Lovette examined Green's cap and noticed that the cap had some little holes in the bib of the cap that Lovette thought were buckshots. Lovette took the cap to the 7th Police Precinct after closing the store at 1 :00 a.m. (*Id.,* pp. 79-81).

Charles Green testified that he was delivering pizzas for Domino's Pizza on the night of April 22. 2003. Green was sent to 3668 Ferry. Green had about $100.00 on his person. (*Id.,* pp. 83-85). When Green reached the Ferry address, he crossed the street. As Green walked between the cars, he noticed a man out the corner of his right eye who was coming towards him. As the man approached Green, he raised the shotgun at Green. Green described his assailant as a dark-skinned African American, who was about "six one, six two, six four," wearing dark clothing with a hood covering his face. The assailant pressed the shotgun against Green and demanded his money. Green then dropped the hot pizza bag that he was holding at the time. The assailant grabbed the pizza bag and threw it to the ground, before pushing the shotgun against Green again. Green gave the man the money that he had in his pockets. (*Id.,* pp. 86-88, 90-91).

Green began running and heard a gunshot fired. Green went to a gas station on East Grand Boulevard, where he called the Domino's store first, before telephoning 911. The police arrived shortly thereafter and Green gave them a description of his assailant. (*Id.,* pp. 96-99). Green's hat had fallen off his head during the robbery. The police

recovered it from the scene of the crime and returned it to Green when they brought him back to the scene that night. Green did not notice the buckshot holes in it until they were pointed out by his manager. (*Id.,* p. 103).

The prosecutor asked Green whether he saw his assailant in the courtroom. Green answered that "he [his assailant] looks like that man [petitioner] right there, but this man [petitioner] here looks younger than him [the assailant] in that respect and in the darkness of night." (*Id.,* p. 98). Green indicated that he thought that his assailant was older than petitioner. (*Id.,* p. 102). Green participated in a police lineup on April 23, 2003, in which he identified a person other than petitioner. (*Id.,* pp. 105-06).

Police Officer Donald Owens responded to a call to meet Mr. Green at the Marathon Gas Station, while two of his partners proceeded directly to the Ferry Street location, where the robbery had taken place. Officer Owens' partner, Officer Dwayne Robinson, received a description of the perpetrator from other witnesses at the scene on Ferry Street, which was then broadcast. (*Id.,* pp. 106, 108).

Police Officer William Eubanks, along with his partner, Officer Luckey, heard the run to 3668 Ferry Street and proceeded to the area to provide backup support. The officers stopped one block short of Ferry Street and drove westbound on Kirby Street to look for any persons matching the description of the perpetrator. (Tr. 8/5/2003, pp. 12-13). While the officers drove down Kirby Street, they noticed petitioner coming from behind a house at 3556 Kirby Street. Petitioner was dressed in a black hat, black hoody, and dark pants. When petitioner noticed the police, he turned around, and appeared to walk to the back of the house, but then changed his mind and began walking back towards the front of the house. (*Id.,* pp. 14-15).

The officers pulled alongside petitioner and detained him. Petitioner spontaneously blurted out,"there's a guy running up the street with a white hat with a big ass gun." Officer Eubanks said that petitioner was "shaking real bad, shaking ... like he was really nervous .... he was sweating real bad coming from up under the hat, sweat getting into his eyes ..he was breathing real heavy." After double-checking the assailant's physical description, Officer Eubanks went to the back of the house where he found a Domino's pizza bag and shotgun on the stairwell. (*Id.,* pp. 16-19). At the time of his arrest, petitioner had $ 81.00 in his possession. (*Id.,* p. 32).

Evidence Technician Michael Choukourian, testified that no identifiable latent fingerprints were located on the shotgun and other items submitted for identification. Although it is possible to locate identifiable prints on money, no currency had been submitted for analysis. (*Id.,* pp. 37·38).

Petitioner subsequently made an inculpatory statement to Sergeant Samuel Dunagan of the Detroit Police Armed Robbery unit. Although petitioner in his statement claimed that Anthony Thompson was the actual gunman, he admitted to participating in the robbery. Petitioner acknowledged that prior to the robbery, he picked up the shotgun and handed it to Thompson. Petitioner indicated that he got approximately $ 80.00 dollars from the robbery. (*Id.,* pp. 56-59).

Petitioner's conviction was affirmed on appeal. *People v. Myles*, No. 250686, 2005 WL 233549 (Mich. Ct. App. Feb. 1, 2005)(unpublished); *lv. den*. 474 Mich. 856, 702 N.W.2d 583 (2005).

Petitioner then filed a petition for writ of habeas corpus with this Court. Respondent moved to dismiss the petition on the ground that it contained claims that had not been

properly exhausted with the state courts. In *lieu* of dismissing the petition without prejudice, this Court held the petition in abeyance to permit petitioner to return to the state courts to exhaust additional claims. *Myles v. Lafler*, No. 2007 WL 1377927 (E.D. Mich. May 10, 2007).

Petitioner filed a post-conviction motion for relief from judgment with the trial court, which was denied. *People v. Myles,* No. 03-005651 (Third Judicial Circuit Court For The County of Wayne, December 18, 2007). The Michigan appellate courts denied petitioner leave to appeal. *People v. Myles,* No. 289425 (Mich.Ct.App. June 12, 2009); *lv. den.* 485 Mich. 1100, 778 N.W.2d 234 (2010).

On April 2, 2010, this Court reopened the case to the Court's active docket. In his amended and supplemental habeas applications, petitioner seeks habeas relief on the following grounds:

> I. Petitioner was denied his statutory right to production of endorsed eyewitnesses and his due process rights to a fair trial under the Fourteenth Amendment and the state constitution, where the prosecution failed to exercise due diligence and the trial court refused to give the adverse inference instruction.
>
> II. Petitioner was denied his right to a fair trial where the prosecution committed prosecutorial misconduct in failing to disclose discovery materials, in violation of the *Brady v. Maryland* rule.
>
> III. Petitioner was denied the effective assistance of trial counsel as guaranteed by the Sixth and Fourteenth Amendments, where counsel (a) failed to investigate and present a defense, (b) refused to investigate and call two exculpatory witnesses whom Mr. Myles informed defense counsel about, and counsel later told the court that Mr. Myles never requested any witnesses, (c) failed to obtain an expert in identification, and (d) the cumulative effect of counsel's errors deprived Mr. Myles of his federal and state due process rights under US Const, Ams V, VI, XIV and Const 1963, Art 1, §§ 17, 20.
>
> IV. Petitioner was denied his Sixth and Fourteenth Amendment rights to the

> effective assistance of appellate counsel where counsel's performance fell below an objective standard of reasonableness resulting in prejudice.
>
> V. Petitioner meets the cause and prejudice standard set forth in 6.508(D) by showing constitutionally ineffective assistance of both trial and appellate counsel in violation of the Sixth Amendment right to effective assistance of counsel, and the Fourteenth Amendment due process rights clause. [1]

## II. Standard of Review

28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent

[1] This fifth "claim" is not a substantive claim for relief but rather is an argument advanced by the petitioner as to why any procedural default of his other claims should be excused.

judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11.

The Supreme Court has explained that "[A] federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,'and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 130 S. Ct. 1855, 1862 (2010)((quoting *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7 (1997); *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002) (*per curiam*)). "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011)(citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* ( citing *Lockyer v. Andrade,* 538 U.S. 63, 75 (2003). Furthermore, pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or...could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *Id.*

"[I]f this standard is difficult to meet, that is because it was meant to be." *Harrington,* 131 S. Ct. at 786. Although 28 U.S.C. § 2254(d), as amended by the AEDPA, does not completely bar federal courts from relitigating claims that have previously been rejected in the state courts, it preserves the authority for a federal court to grant habeas relief only

"in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with" the Supreme Court's precedents. *Id.* Indeed, "Section 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Id.* (citing *Jackson v. Virginia,* 443 U.S. 307, 332, n. 5 (1979))(Stevens, J., concurring in judgment)). Thus, a "readiness to attribute error [to a state court] is inconsistent with the presumption that state courts know and follow the law." *Woodford,* 537 U.S. at 24. Therefore, in order to obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington,* 131 S. Ct. at 786-87. Finally, "If a state court's decision on a constitutional question is 'a close call,' that fact 'militates against the conclusion that the state court's application of the relevant Supreme Court precedent was objectively unreasonable.'" *Lovell v. Duffey*, 629 F. 3d 587, 598 (6th Cir. 2011)(quoting *Lopez v. Wilson*, 426 F. 3d 339, 358, n. 1 (6th Cir.2005)(en banc)(Cole, J., concurring)).

## III. Discussion

### A. The procedural default issue.

Respondent contends that petitioner's second through fourth claims are procedurally defaulted because petitioner raised them only for the first time in his post-conviction motion for relief from judgment and failed to show cause and prejudice, as required by M.C.R. 6.508(D)(3), for failing to raise these claims on direct appeal.

Procedural default is not a jurisdictional bar to review of a habeas petition on the

merits. *See Trest v. Cain*, 522 U.S. 87, 89 (1997). Additionally, "[F]ederal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits." *Hudson v. Jones*, 351 F. 3d 212, 215 (6th Cir.2003)(citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997)). "Judicial economy might counsel giving the [other] question priority, for example, if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law." *Lambrix*, 520 U.S. at 525. Because petitioner's second through fourth claims are without merit, the Court does not need to resolve the procedural default issue, but will address the merits of the claims instead. *See Coy v. Renico,* 414 F. Supp. 2d 744, 764, n. 5 (E.D. Mich. 2006). [2]

**B. Claim # 1. Petitioner is not entitled to habeas relief on his claim that the prosecutor failed to produce *res gestae* witnesses at trial or that the trial judge failed to give an adverse inference instruction.**

Petitioner first contends that the trial court abused its discretion in finding that the prosecution exercised due diligence in its efforts to produce two missing endorsed witnesses, Shalamar Hill and Mary Echols, who gave the police a brief description of petitioner and pointed out the direction that he had fled in. Petitioner claims that the prosecutor failed to exercise due diligence in locating and subpoening these witnesses for trial and thus should not have been excused from producing them at trial. In the

---

[2] Petitioner could not have procedurally defaulted his ineffective assistance of appellate counsel claim that he raises in his fourth claim, because state post-conviction review was the first opportunity that he had to raise this claim. *See Guilmette v. Howes*, 624 F. 3d 286, 291 (6th Cir. 2010). Ineffective assistance of counsel may establish cause for procedural default. *Edwards v. Carpenter*, 529 U.S. 446, 451-52 (2000). If petitioner could show that he received ineffective assistance of appellate counsel that rose to the level of a Sixth Amendment violation, it would excuse his procedural default for failing to raise his claims on his direct appeal in the state courts. *Seymour v. Walker*, 224 F. 3d 542, 550 (6th Cir. 2000). Given that the cause and prejudice inquiry for the procedural default issue merges with an analysis of the merits of petitioner's defaulted claims, it would be easier to consider the merits of these claims. *See Cameron v. Birkett,* 348 F. Supp. 2d 825, 836 (E.D. Mich. 2004).

alternative, petitioner contends that the trial court judge erred in failing to give a requested adverse inference instruction to the jury.

Violations of state law and procedure which do not infringe specific federal constitutional protections are not cognizable claims under Section 2254. *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *See also Jones v. Smith,* 244 F. Supp. 2d 801, 814 (E.D. Mich. 2003).

Federal law does not require the production of *res gestae* witnesses. *Johnson v. Hofbauer,* 159 F. Supp. 2d 582, 601 (E.D. Mich. 2001). Michigan law's requirement that the prosecutors produce *res gestae* witnesses is simply a matter of state law whose enforcement is beyond the scope of federal habeas review. *See Collier v. Lafler,* 419 Fed. Appx. 555, 559 (6th Cir. 2011). "[U]nder federal law, there is no obligation on the part of the prosecutor to call any particular witness unless the government has reason to believe that the testimony would exculpate the petitioner." *Atkins v. Foltz*, 856 F. 2d 192 (Table), 1988 WL 87710, * 2 ( 6th Cir. August 24, 1988)(citing to *United States v. Bryant*, 461 F. 2d 912, 916 (6th Cir. 1972)). Thus, whether a prosecutor exercised due diligence in attempting to locate a *res gestae* witness is outside the scope of federal habeas review. *Collier,* 419 Fed. Appx. at 559.

Petitioner has offered no evidence, other than speculation, that Hill or Echols would have provided exculpatory evidence. Although petitioner claims that these women might have testified that another person was involved in the robbery, petitioner has presented no evidence to support this allegation. Moreover, in light of petitioner's confession to the police, as well as his nervous demeanor and his proximity to incriminating evidence, it is unlikely that these witnesses could have provided any exculpatory testimony.

The Court will also reject petitioner's related instructional error claim. A habeas petitioner is entitled to relief only if the defective jury instruction "so infected the entire trial that the resulting conviction violates due process." *Cupp v. Naughten*, 414 U.S. 141, 147 (1973). A federal court may not grant habeas relief on the ground that a jury instruction was incorrect under state law, *Estelle*, 502 U.S. at 71-72, and "[a]n omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law." *Henderson v. Kibbe*, 431 U.S. 145, 155 (1977).

A criminal defendant does not have a clearly established federal right to a missing witness instruction. Petitioner therefore cannot obtain federal habeas relief based on the state court's failure to give an instruction to his jury regarding the prosecution's failure to produce witnesses. *See Stadler v. Curtin,* 682 F. Supp.2d 807, 821-22 (E.D. Mich. 2010). Petitioner is not entitled to habeas relief on his first claim.

**C. Claim # 2. Petitioner has failed to show that the prosecutor withheld or failed to preserve exculpatory evidence.**

Petitioner next claims that the prosecution either failed to turn over exculpatory evidence to the defense or destroyed potentially exculpatory evidence.

Petitioner first contends that the prosecutor failed to turn over at trial a gunpowder residue test that had been performed on petitioner following his arrest. Petitioner claims that this evidence would have established that he did not fire a weapon and thus, could not have been the person who robbed the victim.

To prevail on his claim, petitioner must show (1) that the state withheld exculpatory evidence and (2) that the evidence was material either to guilt or to punishment irrespective of good faith or bad faith of the prosecution. *Brady v. Maryland,* 373 U.S. 83,

87 (1963). Evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A "reasonable probability is a probability sufficient to undermine confidence in the outcome." *United States v. Bagley,* 473 U.S. 667, 683 (1985). In *Strickler v. Greene,* 527 U.S. 263, 281-82 (1999), the Supreme Court articulated three components or essential elements of a *Brady* claim: (1) the evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; (2) the evidence must have been suppressed by the State, either willfully or inadvertently; and (3) prejudice must have ensued. "Prejudice (or materiality) in the *Brady* context is a difficult test to meet." *Jamison v. Collins*, 291 F. 3d 380, 388 (6th Cir. 2002).

Petitioner raised this claim and a related ineffective assistance of counsel claim in his post-conviction motion for relief from judgment. Although the trial judge did not explicitly address the *Brady* claim, the judge rejected petitioner's related ineffective assistance of counsel claim by noting that the gunshot residue test "was inconclusive and thus unreliable in determining if defendant fired a weapon." *People v. Myles,* No. 03-005651, Slip. Op. at * 5.

Inconclusive test results like the inconclusive gunshot residue test in this case are not exculpatory and thus do not need to be disclosed pursuant to *Brady. See Aldrich v. Bock,* 327 F. Supp. 2d 743, 755-57 (E.D. Mich. 2004); *See also Bell v. Coughlin,* 820 F.Supp. 780, 787 (S.D.N.Y. 1993)(FBI ballistics report not material where findings were mixed and allegedly exculpatory portions of tests were inconclusive)*, Averhart v. State*, 614 N.E.2d 924, 928 (Ind.1993)(inconclusive gun shot residue tests not material under *Brady*). "Inconclusive test results do not have a tendency to make the existence of any

consequential fact more or less probable and, therefore, the test results are not relevant." *Aldrich,* 327 F. Supp. 2d at 757 (internal quotation omitted). In light of the fact that the gunshot residue test in this case was inconclusive, petitioner is unable to show that this evidence would have exculpated him of the crime.

Moreover, even if the gunshot residue test came back negative, the prosecutor's failure to turn over the results of the test to petitioner did not violate the prosecutor's duty to turn over exculpatory evidence to the defense, because a negative gunshot residue test would not necessarily be indicative of a lack of contact with a weapon. *See Bonnell v. Mitchell,* 212 Fed.Appx. 517, 522 (6th Cir. 2007).

Finally, in light of the substantial evidence against petitioner, including his confession, the suppression of the gunshot residue test result in this case was harmless error at most. *See Hamblin v. Mitchell*, 354 F.3d 482, 495-96 (6th Cir. 2003). Accordingly, petitioner is not entitled to habeas relief on this claim.

In a supplemental petition for writ of habeas corpus, petitioner contends that his due process rights were violated when the Detroit Police Department Forensics Laboratory destroyed some of the evidence from his case subsequent to petitioner' s trial and the conclusion of his direct appeal. Petitioner specifically notes that the Domino's Pizza Bag that was found on the steps on the back of the house where petitioner was coming from was destroyed on January 17, 2007, the shotgun in this case was destroyed on February 7, 2007, one spent shotgun shell from inside the shotgun was disposed of on February 28, 2008, and four live shotgun shells were destroyed on September 2, 2008. In addition, the money recovered from petitioner after the robbery has been deposited in the bank. Petitioner claims that this evidence could have exonerated him of the crime in several

ways. First, petitioner contends that the absence of gunshot residue from the shotgun or the shotgun shells would have established that the shotgun that was recovered by the police from the back of the house that petitioner had been walking away from had not been discharged, thus, disproving that this was the weapon used in the robbery. Petitioner also contends that had the shotgun, the shells, or the pizza bag been tested, it is possible that neither his fingerprints nor DNA would have been recovered, which also would have negated petitioner's involvement in the robbery. Lastly, petitioner alleges that if the shotgun had been test-fired, it could have been determined whether it would have been possible to determine whether this shotgun could have left buckshot in the victim's hat without also hitting the victim as well.

As a preliminary matter, this claim has not been exhausted with the state courts. Although petitioner presented a claim before the state courts that the prosecutor had failed to turn over the results of the gunshot residue test, petitioner never presented a claim to the state courts involving the police department laboratory's destruction of the above items.

For purposes of federal habeas review, exhaustion requires that a claim raised in a habeas petition must be presented to the state courts under the same theory in which it is later presented in federal court. *See Williams v. Bagley,* 380 F. 3d 932, 969 (6th Cir. 2004). A claim may be considered "fairly presented" only if the petitioner asserted both the factual and legal basis for his claim in the state courts. *See Hicks v. Straub,* 377 F. 3d 538, 552 (6th Cir. 2004). Because petitioner did not present the identical factual basis of this prosecutorial misconduct claim to the state courts, petitioner did not fairly present this portion of his prosecutorial misconduct claim to the state courts. *See Wagner v. Smith,*

581 F. 3d 410, 415-17 (6th Cir. 2009).

However, a habeas petitioner's failure to exhaust his or her state court remedies does not deprive a federal court of its jurisdiction to consider the merits of the habeas petition. *Granberry v. Greer*, 481 U.S. 129, 131 (1987). An unexhausted claim may be addressed if the unexhausted claim is without merit, such that addressing the claim would be efficient and would not offend the interest of federal-state comity. *See Prather v. Rees,* 822 F.2d 1418, 1422 (6th Cir.1987). In these circumstances, a federal court should deny a non-federal or frivolous claim on the merits to save the state courts the useless review of meritless constitutional claims. *Cain v. Redman*, 947 F. 2d 817, 820 (6th Cir. 1991). Because this portion of petitioner's second claim lacks merit, in the interests of efficiency and justice, the Court will address petitioner's claim, rather than dismiss the petition on exhaustion grounds. See *Welch v. Burke*, 49 F. Supp. 2d 992, 998 (E.D. Mich. 1999).

The *Brady* rule extends to evidence that is not suppressed but is altered or destroyed. *See California v. Trombetta,* 467 U.S. 479, 489 (1984). For such evidence to meet the standard of constitutional materiality, it "must both possess an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." *Id*. at 488-89.

However, the failure of police to preserve evidence that is only potentially useful for a defendant is not a denial of due process of law unless the defendant can show bad faith on the part of police. *Arizona v. Youngblood*, 488 U.S. 51, 57-58 (1988). When the state fails to preserve evidentiary material "of which no more can be said than that it could have been subjected to tests, the results of which might have exonerated the defendant," a

defendant must show: (1) that the government acted in bad faith in failing to preserve the evidence; (2) that the exculpatory value of the evidence was apparent before its destruction; and (3) that the nature of the evidence was such that the defendant would be unable to obtain comparable evidence by other means. *Monzo v. Edwards,* 281 F. 3d 568, 580 (6th Cir. 2002). A habeas petitioner has the burden of establishing that the police acted in bad faith in failing to preserve potentially exculpatory evidence. *See Malcum v. Burt,* 276 F. Supp. 2d 664, 683 (E.D. Mich. 2003)(internal citations omitted). The mere fact that the police had control over evidence and failed to preserve it is insufficient, by itself, to establish bad faith, nor will bad faith be found in the government's negligent failure to preserve potentially exculpatory evidence. *Id.* "The presence of absence of bad faith by the police for purposes of the Due Process Clause must necessarily turn on the police's knowledge of the exculpatory value of the evidence at the time it was lost or destroyed." *Youngblood,* 488 U.S. at 56, n.

Petitioner's claim fails because these evidentiary items were not destroyed prior to petitioner's trial, but only after petitioner had been convicted and his direct appeal with the Michigan Court of Appeals and the Michigan Supreme Court had concluded. Both *Trombetta* and *Youngblood* involve the pre-trial destruction of evidence. In the present case, this evidence was destroyed long after petitioner's conviction. There is no clearly established Supreme Court law that the post-conviction destruction of evidence is a due process violation, thus ,petitioner's claim is non-cognizable on federal habeas review. *See Cress v. Palmer,* 484 F. 3d 844, 853 (6th Cir. 2007).

Petitioner's claim also fails because his contention that any of this evidence

contained exculpatory material is entirely speculative. *See United States v. Jobson,* 102 F. 3d 214, 219 (6th Cir. 1996). "Where '[t]here is no indication that there was anything exculpatory' about destroyed evidence, due process has not been violated." *Id.,* (quoting *United States v. Braggs*, 23 F.3d 1047, 1051 (6th Cir. 1994)).

Finally, petitioner has failed to establish that the police acted in bad faith when they disposed of this evidence. Petitioner's conclusory allegations regarding the alleged destruction of potentially exculpatory material fail to establish that the police, in bad faith, destroyed any evidence with knowledge of its exculpatory value. *See Malcum,* 276 F. Supp. 2d at 683. Petitioner's trial ended in 2003 and his direct appeal was concluded in 2005. This evidence was disposed of in 2007 and in 2008. The passage of time between the conclusion of petitioner's trial and direct appeal and the destruction of this evidence would tend to indicate a lack of bad faith on the part of the police. *See Hubanks v. Frank*, 392 F.3d 926, 930-31 (7th Cir. 2004). Petitioner is not entitled to habeas relief on his second claim.

**D. Claims # 3 and # 4. Petitioner was not deprived of the effective assistance of trial or appellate counsel.**

Petitioner next contends that he was deprived of the effective assistance of counsel.

To show that he was denied the effective assistance of counsel under federal constitutional standards, a defendant must satisfy a two prong test. First, the defendant must demonstrate that, considering all of the circumstances, counsel's performance was so deficient that the attorney was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In so doing, the defendant must overcome a strong presumption that counsel's behavior lies within the

wide range of reasonable professional assistance. *Id*. In other words, petitioner must overcome the presumption that, under the circumstances, the challenged action might be sound trial strategy. *Strickland,* 466 U.S. at 689. Second, the defendant must show that such performance prejudiced his defense. *Id*. To demonstrate prejudice, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694. "*Strickland*'s test for prejudice is a demanding one. 'The likelihood of a different result must be substantial, not just conceivable.'" *Storey v. Vasbinder*, 657 F.3d 372, 379 (6th Cir. 2011)(quoting *Harrington*, 131 S. Ct. at 792). The Supreme Court's holding in *Strickland* places the burden on the defendant who raises a claim of ineffective assistance of counsel, and not the state, to show a reasonable probability that the result of the proceeding would have been different, but for counsel's allegedly deficient performance. *See Wong v. Belmontes*, 130 S. Ct. 383, 390-91 (2009). The *Strickland* standard applies as well to claims of ineffective assistance of appellate counsel. *See Whiting v. Burt,* 395 F. 3d 602, 617 (6th Cir. 2005).

More importantly, on habeas review, "the question 'is not whether a federal court believes the state court's determination' under the *Strickland* standard 'was incorrect but whether that determination was unreasonable-a substantially higher threshold.'" *Knowles v. Mirzayance*, 129 S. Ct. 1411, 1420 (2009)(quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)). "The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking whether defense counsel's performance fell below *Strickland's* standard." *Harrington v. Richter*, 131 S. Ct. at 785. Indeed, "because the *Strickland* standard is a general standard, a state court has even

more latitude to reasonably determine that a defendant has not satisfied that standard." *Knowles,* 129 S. Ct. at 1420 (citing *Yarborough v. Alvarado*, 541 U.S. at 664). Pursuant to § 2254(d)(1) standard, a "doubly deferential judicial review" applies to a *Strickland* claim brought by a habeas petitioner. *Id.* This means that on habeas review of a state court conviction, "[A] state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself."*Harrington*, 131 S. Ct. at 785. "Surmounting *Strickland's* high bar is never an easy task." *Id.* at 788 (quoting *Padilla v. Kentucky*, 130 S. Ct. 1473, 1485 (2010)).

Because of this doubly deferential standard, the Supreme Court has indicated that:

> Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel' s actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard.

*Harrington v. Richter*, 131 S. Ct. at 788.

Finally, this Court is aware that "[R]eliance on 'the harsh light of hindsight' to cast doubt on a trial that took place" over eight years ago and an appeal that took place seven years ago "is precisely what *Strickland* and AEDPA seek to prevent." *Harrington v. Richter*, 131 S. Ct. at 789.

Petitioner first contends that his trial counsel was ineffective for failing to file a pre-trial motion to obtain the results of the gunpowder residue test. In his supplemental petition, petitioner argues that trial counsel was ineffective for not requesting that the shotgun, the shotgun shells, the money, or the pizza bag be tested for the presence or

absence of gunpowder residue, petitioner's fingerprints, or DNA, as the absence of this type of evidence on these items would have exonerated petitioner of the crime.

The Sixth Circuit has observed that "it is well settled that 'the test for prejudice under *Brady* and *Strickland* is the same.'" *Montgomery v. Bobby*, 654 F. 3d 668, 680, n. 4 (6th Cir. 2011); *See also Hutchison v. Bell,* 303 F. 3d 720, 749 (6th Cir. 2002). This Court has already determined in rejecting petitioner's *Brady* claim that petitioner failed to establish that any of this evidence would have been exculpatory. In light of the fact that petitioner has failed to show that any of this evidence would have exculpated him, trial counsel's failure to obtain the inconclusive results from the gunpowder residue test or to seek to have the remaining items preserved and tested was not prejudicial to petitioner, so as to sustain an ineffective assistance of counsel claim.

Petitioner next contends that trial counsel was ineffective for failing to move to suppress his confession to the police. Petitioner indicates that before trial, counsel asked petitioner about a statement that petitioner had "allegedly made" to the police after his arrest. Petitioner indicates that he informed counsel that he had never made any such statement to the police. Petitioner contends that trial counsel was ineffective for failing to move for an evidentiary hearing pursuant to *People v. Walker (On Rehearing),* 374 Mich. 331; 132 N.W. 2d 87 (1965) to seek the suppression of his statement on this basis.

Under Michigan law, a criminal defendant is entitled to a *Walker* hearing to prevent prejudice that may occur if a defendant has given police inculpatory statements "which are considered legally inadmissible due to the coercive circumstances surrounding the confession." *People v. Spivey*, 109 Mich. App. 36, 37; 310 N.W. 2d 807 (1981). However,

"[O]ther factors relating to the confession, such as credibility, truthfulness and whether the statement had been made at all, remain for the determination of the trier of fact." *Id.* A trial court does not have to grant a *Walker* hearing "where a defendant contests the fact of a statement rather than its voluntariness." *People v. Weatherspoon*, 171 Mich. App. 549, 554; 431 N.W.2d 75 (1988); *See also People v. Washington,* 4 Mich. App. 453, 455, 145 N.W.2d 292 (1966)(the question of the voluntariness of defendant's statement could not be reviewed by Michigan Court of Appeals so long as the defendant persisted in his denial that the statement was made). In cases where a criminal defendant denies making a statement to the police, the question whether defendant made the statements is correctly left to the jury to decide. *Weatherspoon,* 171 Mich. App. at 555.

In the present case, petitioner informed his counsel that he did not confess to the police. Under Michigan law, this did not provide a basis to suppress the statement. In light of the fact that there was no legal basis to exclude petitioner's statement, counsel was not ineffective for failing to move for a *Walker* hearing. *See e.g. Brown v. McKee,* 231 Fed. Appx. 469, 475 (6th Cir. 2007).

Petitioner next contends that trial counsel was ineffective for failing to move for a continuance to obtain the presence of the two *res gestae* witnesses, Shalamar Hill and Mary Echols, whom the prosecutor failed to produce at trial.

In the present case, petitioner has offered only speculation that Hill or Echols could have provided exculpatory testimony. In light of the additional evidence in this case, including petitioner's proximity to the victim's pizza bag and a shotgun, his nervous behavior at the time that he was confronted by the police, and his statement admitting his

involvement in the crime, counsel's failure to request a continuance to obtain these two witnesses was not ineffective. *See e.g. Alexander v. Smith,* 342 F. Supp. 2d 677, 691-92 (E.D. Mich. 2004).

Petitioner next contends that trial counsel was ineffective for failing to call two exculpatory witnesses on his behalf. On the first day of trial, petitioner expressed dissatisfaction with his trial counsel, indicating that he had informed counsel that he had two witnesses that he wished to have called on his behalf. Petitioner, however, did not mention the names of these witnesses or suggest the nature of their testimony. (Tr. 8/4/03, pp. 6-7).

Petitioner has also failed to attach any affidavits from these witnesses to his state post-conviction motion or briefs, nor has he provided this Court with any affidavits from these witnesses concerning their proposed testimony and willingness to testify on the petitioner's behalf. Conclusory allegations of ineffective assistance of counsel, without any evidentiary support, do not provide a basis for habeas relief. *See Workman v. Bell,* 178 F.3d 759, 771 (6th Cir. 1998). By failing to present any evidence to the state courts in support of his ineffective assistance of claim, petitioner is not entitled to an evidentiary hearing on his ineffective assistance of counsel claim with this Court. *See Cooey v. Coyle*, 289 F. 3d 882, 893 (6th Cir. 2002)(citing 28 U.S.C. § 2254(e)(2)(A)(ii)). Petitioner has failed to attach any offer of proof or any affidavits sworn by the proposed witnesses. Petitioner has offered, neither to the Michigan courts nor to this Court, any evidence beyond his own assertions as to whether the witnesses would have been able to testify and what the content of these witnesses' testimony would have been. In the absence of

such proof, petitioner is unable to establish that he was prejudiced by counsel's failure to call these witnesses to testify at trial, so as to support the second prong of an ineffective assistance of counsel claim. *See Clark v. Waller,* 490 F. 3d 551, 557 (6th Cir. 2007).

Petitioner next claims that trial counsel was ineffective for failing to obtain an expert in eyewitness identification.

"No precedent establishes that defense counsel must call an expert witness about the problems with eyewitness testimony in identification cases or risk falling below the minimum requirements of the Sixth Amendment." *Perkins v. McKee*, 411 Fed. Appx. 822, 833 (6th Cir. 2011); *cert. den.* 132 S. Ct. 230 (2011). Moreover, although counsel did not call an expert witness on the problems of eyewitness identification, trial counsel vigorously cross-examined the victim about the problems with his identification. In response to trial counsel's questions, Green admitted that the robbery was scary, happened quickly, and took place on a dark night in an area with bad lighting. Green acknowledged that he did not get a good look at the perpetrator's face and could not distinctly identify petitioner. Green conceded that he did not pick out petitioner at a lineup. (Tr. 8/4/2003, pp. 101-06). Petitioner was not denied effective assistance of counsel due to trial counsel's failure to seek the assistance of expert witness on identification, where counsel elicited testimony to discredit the victim's identification testimony. *See Greene v. Lafler,* 447 F. Supp. 2d 780, 794-95 (E.D. Mich. 2006). Moreover, in light of the fact that petitioner confessed to his involvement in this crime, petitioner was not prejudiced by counsel's failure to call an expert on the problems with eyewitness identification. *Id.* at 795.

Petitioner next claims that the cumulative nature of the errors deprived him of the

effective assistance of trial counsel. Because the individual claims of ineffectiveness alleged by petitioner are all essentially meritless, petitioner cannot show that the cumulative errors of his counsel amounted to the ineffective assistance of trial counsel. *Seymour v. Walker*, 224 F. 3d 542, 557 (6th Cir. 2000). Petitioner is not entitled to habeas relief on his third claim.

In his fourth claim, petitioner contends that appellate counsel was ineffective for failing to raise his second and third claims on his appeal of right.

This Court has already determined that petitioner's second and third claims are without merit. "[A]ppellate counsel cannot be found to be ineffective for 'failure to raise an issue that lacks merit.'" *Shaneberger v. Jones*, 615 F. 3d 448, 452 (6th Cir. 2010)(quoting *Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001)). Because none of these claims can be shown to be meritorious, appellate counsel was not ineffective in his handling of petitioner's direct appeal. Petitioner is not entitled to habeas relief on his ineffective assistance of appellate counsel claim.

## IV. Conclusion

The Court will deny the petition for writ of habeas corpus. The Court will also deny a certificate of appealability to petitioner. In order to obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). To demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether, or agree that, the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000).

When a district court rejects a habeas petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims to be debatable or wrong. *Id.* at 484. "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254.

For the reasons stated in this opinion, the Court will deny petitioner a certificate of appealability because he has failed to make a substantial showing of the denial of a federal constitutional right. *See also Millender v. Adams,* 187 F. Supp. 2d 852, 880 (E.D. Mich. 2002). The Court will also deny petitioner leave to appeal *in forma pauperis*, because the appeal would be frivolous. *See Allen v. Stovall,* 156 F. Supp. 2d 791, 798 (E.D. Mich. 2001).

## V. ORDER

Based upon the foregoing, IT IS ORDERED that the petition for a writ of habeas corpus is **DENIED WITH PREJUDICE.**

IT IS FURTHER ORDERED That a certificate of appealability is **DENIED.**

IT IS FURTHER ORDERED that leave to appeal *in forma pauperis* is **DENIED**.

s/Gerald E. Rosen
Chief Judge, United States District Court

Dated: March 27, 2012

I hereby certify that a copy of the foregoing document was served upon counsel of record on March 27, 2012, by electronic mail and upon Gregory Myles, #383113, Michigan Reformatory (RMI), 1342 West Main Street, Ionia, MI 48846 by ordinary mail.

s/Ruth A. Gunther

Case Manager